ORIGINAL

ERIK M. PRITCHARD (SBN 244622)
Email: epritchard@rdblaw.com
ROSS, DIXON & BELL, LLP
5 Park Plaza, Suite 1200
Irvine, California 92614-8529
Telephone: (949) 622-2700
Fax: (949) 622-2739

*Attorneys for Plaintiff*
*NIC Insurance Company*

FILED
08 MAR 19 PM 3:38
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY CP DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FAXED

| | |
|---|---|
| NIC INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MILLER, MONSON, PESHEL, POLACEK & HOSHAW; RALPH GANO MILLER; MITCHELL BILAFER; MARTIN BILAFER; JUDITH A. DOYLE; PREMIER TRUST; RICHARD P. DOYLE, JR.; DEBORAH J. DOYLE; CATHERINE T. DOYLE; DEANNA L. ANDREWS; and MICHELLE ALESSANDRIA,<br><br>Defendants. | Case No. '08 CV 0512 JAH LSP<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**(I) RESCISSION**<br>**(II) DECLARATORY JUDGMENT**<br>**(III) DECLARATORY JUDGMENT**<br>**(IV) DECLARATORY JUDGMENT**<br>**(V) DECLARATORY JUDGMENT** |

Plaintiff NIC Insurance Company ("Navigators") alleges on knowledge, information and belief as follows:

1. This is an action by Navigators pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment regarding its rights and obligations under Lawyers Professional Liability Insurance Policy No. NY06LPL870198NC, issued to Miller, Monson, Peshel, Polacek & Hoshaw (the "Firm"), for the policy period March 15, 2006 to March 15, 2007 (the "Policy").

2. An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties, and obligations under the Policy. The Firm and one of its now-



ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

CR

retired partners, Defendant Ralph Miller, have admitted to committing significant errors in certain trust documents prepared on behalf of Dr. Mitchell Bilafer. The Firm and Mr. Miller have demanded defense and indemnity coverage under the Policy for the claims arising out of those errors.

3. Navigators seeks a judgment declaring the Policy issued to the Firm is void *ab initio* on the grounds that it was procured by the Firm on the basis of material misrepresentations and/or omissions of fact. Alternatively, Navigators seeks a determination that no coverage is available under the Policy for any claims arising out of the errors in the trust documents. Finally, Navigators seeks a determination that it is entitled to repayment of any defense costs and other amounts paid by Navigators on behalf of the Firm and Mr. Miller.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

5. Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of events giving raise to the claims at issue occurred in this district.

**PARTIES**

6. Plaintiff Navigators is a corporation organized and existing under the laws of New York, with its principal place of business in New York. Accordingly, Navigators is a citizen of the State of New York.

7. Defendant Miller, Monson, Peshel, Polacek & Hoshaw (the "Firm") is a partnership of professional law corporations organized under the laws of California. The Firm is located in San Diego, California and is a citizen of California. Upon information and belief, all of the Firm's partners are citizens of California.

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

8. Defendant Ralph Gano Miller ("Miller) at all relevant times was a partner in the Firm. Upon information and belief, Mr. Miller was a citizen of the State of California during the relevant time period and is currently a citizen of California.

9. Defendant Dr. Mitchell Bilafer is an individual who, upon information and belief, is a resident and citizen of the State of California.

10. Defendant Martin Bilafer is an individual who, upon information and belief, is a resident and citizen of the State of California.

11. Defendant Judith A. Doyle is an individual who, upon information and belief, is a resident and citizen of the State of California.

12. Defendant Premier Trust is the trustee of the Judith A. Doyle Gift Trust. Upon information and belief, Premier Trust is a Nevada corporation and is a citizen of the State of Nevada.

13. Defendant Richard P. Doyle, Jr. is an individual who, upon information and belief, is a resident and citizen of the State of California.

14. Defendant Deborah J. Doyle is an individual who, upon information and belief, is a resident and citizen of the State of California.

15. Defendant Catherine T. Doyle is an individual who, upon information and belief, is a resident and citizen of the State of California.

16. Defendant DeAnna L. Andrews is an individual who, upon information and belief, is a resident and citizen of the State of California.

17. Defendant Michelle Alessandria is an individual who, upon information and belief, is a resident and citizen of the State of California.

## FACTUAL BACKGROUND

**The Application for Insurance**

18. The process of underwriting an insurance policy involves the receipt, review and analysis of timely and accurate information supplied by the applicant in order to permit the insurer to evaluate fairly the potential risks for which coverage is sought and to determine whether, and upon what terms, a policy of insurance will be issued.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

19. On or about March 7, 2006, the Firm submitted an application to renew its professional liability insurance with Navigators. In this regard, the Firm submitted an application on a Lloyd's form, which was signed by Thomas M. Monson, the President of the Firm, and dated February 27, 2006 (the "Lloyd's Application").

20. The following statement appears above Mr. Monson's signature on the Lloyd's Application:

> The Applicant declares and warrants that, after enquiry, to the best knowledge of all persons to be insured the statements set forth herein and in any attachments made hereto are true and no material facts have been surpressed [sic] omitted or misstated. Underwriters reserve the right to deny or rescind coverage on any Policy that is issued as a result of this Application if, in the statements set forth herein and in any attachments made hereto it is found that material information has been omitted, surpressed [sic] or misstated.

21. The preamble to Question 10 of the Lloyd's Application states: "The term 'after enquiry' is deemed to mean to the knowledge of any Owner, Partner, Shareholder, Associate, Employed Lawyer, of Counsel or Employee." Questions 10.B and 10.C then asked:

> 10.B After enquiry, have any claims or suits been made in the [last][1] Ten years against the Applicant or any past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers, Contract Lawyers, Employees or its predecessors in business?
>
> 10.C After enquiry, are any persons listed 1 [sic] Supplement 1 aware of any circumstances, allegations, Tolling agreements or contentions as to any incident which may result in a claim being made against the Applicant or any of its past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers, Contract Lawyers or Employees or its predecessors in business?

---

[1] In the Lloyd's Application as submitted to Navigators, the word "late" in the printed form is crossed out, and the correct word, "last," is handwritten in its place.

22. The Firm answered "Yes" to Questions 10.B and 10.C of the Lloyd's Application, and submitted Supplement 6 identifying certain matters, but failed to disclose any claim or potential claim arising out the trust documents prepared for Dr. Bilafer.

23. Question 10.D of the Lloyd's Application asked:

> Have all claims and circumstances requiring a response in questions 10B and 10C already been reported to and accepted by a current or past insurer?
>
> If no, please give full details below or on a separate addendum.

24. The Firm answered "Yes" to Question 10.D, even though it had not reported to Navigators (or any other carrier) any claim or potential claim arising out of the trust documents prepared for Dr. Bilafer.

25. Based on the Lloyd's Application, Navigators issued two "Renewal Indication Letters," dated March 8, 2006 and March 10, 2006, respectively, and then issued a Renewal Binder Letter dated March 14, 2006. Copies of the Renewal Indication Letters and the Renewal Binder Letter are attached hereto as Exhibit A.

26. Each of the Renewal Indication Letters and the Renewal Binder Letter included the following condition:

> **This renewal indication and/or binder is conditioned upon and subject to no new claims or potential claims being reported under the expiring Navigators lawyers professional liability policy.**

27. Each of the Renewal Indication Letters and the Renewal Binder Letter also included as conditions the following:

> ***1) Fully Executed Navigators Proposal Form with original signature***
>
> ***2) Review of updated claim information (payments & reserves)***

28. To satisfy a condition stated in the Renewal Indication Letters and the Renewal Binder Letter, the Firm submitted an application on the Navigators form, which was signed by Mr. Monson and dated March 14, 2006 (the "Application"). The following statement is found above Mr. Monson's signature:

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

REPRESENTATION: I/We hereby declare that the above statements and information are true and that I/we have not omitted, suppressed or misstated any facts… I/We agree that this application shall be the basis of an insurance contract with the Company, should a policy be issued….

29. Questions No. 8.C and 8.D of the Application asked:

**Experience – After Inquiry of Each Lawyer Included in Section 4**

* * *

C. In the last year, does any lawyer included in Question 4B know of an act, error or omission that may reasonably be expected to be the basis of a claim against them, the firm, any prior or predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm? If "yes", complete **SUPPLEMENT #2** for each circumstance/incident.

D. In the last year, has any professional liability claim or suit ever been made against any lawyer included in Question 4B or against the applicant law firm, any prior firm, or any lawyer while practicing at the applicant law firm or prior firm, whether or not the lawyer is still employed. Furthermore, has any incident or circumstances (open or closed) been reported to any malpractice carrier or not, in the last year? If "yes", complete **SUPPLEMENT #2** for each claim, circumstance or incident.

30. The Firm answered "Yes" to Questions 8.C and 8.D, and submitted a supplement identifying certain matters, but failed to disclose any claim or potential claim regarding the trust documents prepared for Dr. Bilafer. (The Firm attached a copy of Supplement 6 to the Lloyd's Application rather than a new Supplement 2.).

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

**The Policy**

31. In reliance upon the accuracy and completeness of the information provided to Navigators by the Firm during the underwriting process for the Policy, Continental issued the Policy. A true and correct copy of the Policy is attached hereto as Exhibit B.

32. The Policy provides "claims made and reported" coverage. That is, subject to its terms and conditions, the Policy obligates Navigators to "pay on behalf of the Insured Damages and Claims Expenses which the Insured shall become legally obligated to pay because of any Claim or Claims… first made against the Insured and reported to the Company during the Period of Insurance or Extended Reporting Period…." Policy, I.A., Insuring Agreements.

33. The Policy defines "Claim" as a "demand received by any Insured for money or services including the service of suit or institution of arbitration proceedings against the Insured." Policy, V.E., Conditions.

34. The Policy defines "Period of Insurance" as "the period of time between the inception date shown in the Declarations and the effective date of termination…." Policy, V.C., Conditions.

35. The Policy does not provide coverage with respect to:

> (i) any Claim arising out of any acts, errors, or omissions which took place prior to the effective date of this insurance, if any Insured on the effective date knew or could have reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a Claim[.]

Policy, IV(i), Exclusions.

36. The Policy contractually obligates the Insured to assist and cooperate with Navigators. Specifically, the Policy states:

> The Insured shall not, except at his own cost, admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any Claim without the consent of the Company.

Policy, XII, Assistance and Cooperation of the Insured.

**The Underlying Litigation**

37. The two underlying lawsuits arise out of the Firm's preparation of the Judith A. Doyle Trust and the Martin J. Bilafer Trust (collectively, the "Trusts"), on behalf of Dr. Mitchell Bilafer. Those lawsuits are styled, *Premier Trust v. Miller, Monson & Peshel, et al.*, No. 37-2007-00075798-CU-PN-CTL, Super. Ct. for the County of San Diego, and *Richard P. Doyle, Jr., et al. v. Miller, Monson & Peshel et al.*, No. 37-2007-00073018-CU-PN-CTL, Super. Ct. for the County of San Diego. The plaintiffs in *Richard P. Doyle, Jr., et al. v. Miller, Monson & Peshel et al.* recently filed a First Amended Complaint. True and correct copies of the complaints are attached hereto as Exhibit C, Exhibit D, and Exhibit E, respectively.

38. In 1994, Dr. Bilafer retained the Firm to draft the Trusts. The Trusts were intended to be irrevocable. Dr. Bilafer instructed that each of the Trusts would hold 50% of the estate assets. Judith Doyle and Martin Bilafer were to receive the interest income from their respective Trusts during their lives, but they would be prohibited from accessing the principal. Upon their deaths, the principal of the estate held evenly by the two Trusts would be distributed 5/7 to Judith Doyle's five children, and the remaining 2/7 to Martin Bilafer's two children. The Trusts, however, were not funded at that time.

39. Five years later, in 1999, Dr. Bilafer instructed the Firm to finalize his estate plan, including finalizing the Trusts. The "1999" Trusts were to be the same as the "1994" Trusts.

40. The Firm drafted the 1999 Trusts. Dr. Bilafer executed the Trusts in December 1999, and Martin Bilafer was appointed Trustee.

41. In 2005, Dr. Bilafer discovered that the 1999 Trusts did not comply with his intentions. Significantly, they did not provide for an equal distribution among Dr. Bilafer's seven grandchildren. Instead, they provided that the assets would pass "per stirpes" upon the deaths of Judith Doyle and Martin Bilafer, meaning that Judith Doyle's five children would share 50% of the assets and Martin Bilafer's two children would share the other 50% of the assets. In addition, the 1999 Trusts failed to prohibit Martin Bilafer and Judith Doyle from accessing the Trusts' principal, contrary to Dr. Bilafer's intent.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

42. Dr. Bilafer promptly requested that the Firm remedy these errors.

43. By no later than November 30, 2005, the Firm admitted making the errors and agreed to correct the errors at no cost to Dr. Bilafer.

44. On December 15, 2005, the Firm concluded that the errors could not be remedied by a simple declaration from Dr. Bilafer, and agreed that a formal petition for modification would have to be filed with the court. The Firm agreed that Dr. Bilafer would not be billed for the Firm's legal services for pursuing the modification.

45. In January 2006, the Firm outlined for Dr. Bilafer the variety of errors that the Firm had made in the 1999 Trusts. The Firm advised Dr. Bilafer that it could not prepare the petition to correct the Trusts because Martin Bilafer asserted that there was a conflict of interest. The Firm further advised that Martin refused to waive the conflict. Accordingly, because Martin would not waive the conflict, the Firm agreed with Dr. Bilafer that the Firm would pay an outside attorney to pursue the petition for modification of the Trusts.

46. In conjunction with the petition for modification, on or about February 5, 2006, Mr. Miller executed a Declaration of Scrivener's Error wherein he recounted all of the inconsistencies between the 1994 and 1999 Trusts.

47. In March of 2006, subsequent to all of the events described above, the Firm submitted the Lloyd's Application and the Application in order to renew its professional liability insurance with Navigators.

48. On March 15, 2006, the Policy incepted.

49. In September 2006, Martin Bilafer filed a formal objection to Dr. Bilafer's petition to modify the Trusts.

50. While the petition for modification was pending, the Firm and the five Doyle grandchildren executed a tolling agreement on September 28, 2006.

51. On February 5, 2007, the Firm for the first time provided Navigators with notice of a potential claim against it, arising out of the errors it had made in drafting the Trusts.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

52. One day later, on or about February 6, 2007, the Superior Court denied Dr. Bilafer's petition to modify the Trusts, finding that he did not have standing to bring the petition. Dr. Bilafer currently is appealing that decision.

53. On August 15, 2007, Judith Doyle's five children filed suit against the Firm and Mr. Miller for professional negligence. On or about February 13, 2008, Ms. Doyle's five children filed a First Amended Complaint against the Firm and Mr. Miller, among others.

54. On or about September 27, 2007, Premier Trust and Judith Doyle filed suit against the Firm and Mr. Miller.

55. Martin Bilafer has asserted that he may also have a claim against the Firm.

56. Navigators has agreed to provide a defense for the Firm and Mr. Miller, subject to a complete reservation of rights, including the right to seek repayment of any defense costs paid by Navigators.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

## COUNT I

## Navigators Is Entitled To A Judicial Declaration That It Is Entitled To Rescind The Policy And That The Policy Is Void *Ab Initio*

57. Navigators repeats and incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint.

58. The Firm's responses to Questions 10.B and 10.C of the Lloyd's Application and to Questions 8.C and 8.D of the Application omitted and/or suppressed facts relevant to the underwriting of the Policy. Specifically, the Firm failed to disclose any claim or potential claim arising out of its acknowledged errors in drafting the trust documents from Dr. Bilafer.

59. The Firm's material omission and/or suppression of facts was reasonably relied on by Navigators and was material to Navigators' acceptance of the risk or to the hazard assumed by Navigators in issuing the Policy.

60. An accurate and complete response to Questions 10.B and 10.C of the Lloyd's Application and Questions 8.C and 8.D of the Application should have included disclosure of

claims and/or potential claims by Dr. Bilafer, Martin Bilafer, the Judith A. Doyle Gift Trust and/or the Doyle Family against the Firm and Mr. Miller.

61. If the true facts had been known to Navigators, it either would not have issued the Policy, or would not have issued the Policy on the same terms (including at the same premium). Navigators has tendered and hereby again tenders a refund of the premium paid for the Policy.

62. By virtue of the foregoing, Navigators is entitled to a judgment that the Policy is void *ab initio* and without legal force or effect, and that Navigators has no obligation or duty to provide coverage for any claims asserted under the Policy.

**COUNT II**

**Navigators Is Entitled To A Judicial Declaration That There Is No Coverage For Claims Arising Out Of The Errors In The Trusts, On The Ground That A Claim Was Made Before The Policy Incepted**

63. Navigators repeats and incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint.

64. As described above, the Policy provides coverage for claims that are "first made against the Insured and reported to the Company during the Period of Insurance...."

65. As described above, the Policy defines "Claim" as "a demand received by any Insured for any money or services...."

66. By no later than November 30, 2005, Dr. Bilafer advised the Firm of the errors in the Trusts, Dr. Bilafer requested that the Firm remedy the errors, and the Firm admitted that it had committed errors in drafting the 1999 Trusts and agreed to remedy the errors at no cost to Dr. Bilafer.

67. After concluding that the errors could not be remedied by a simple declaration, the Firm agreed that a formal petition for modification would have to be filed with the court. The Firm agreed that Dr. Bilafer would not be billed for the Firm's services in pursuing that petition.

68. In January 2006, when Martin Bilafer refused to waive the purported conflict of the Firm preparing the petition, the Firm agreed with Dr. Bilafer that the Firm would pay an outside attorney to pursue the petition.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

69. Under these circumstances, a "claim" regarding the Firm's alleged professional negligence in connection with the Trusts was first made prior to the Policy's March 15, 2006 inception date. A demand for both money and services was received – and, indeed, assented to – by the Firm before the Policy's inception date.

70. By reason of the foregoing, Navigators is entitled to a judgment declaring that the Policy provides no coverage for claims arising out of the errors in the Trusts.

## COUNT III

**Alternatively, Navigators Is Entitled To A Judicial Declaration That There Is No Coverage For Claims Arising Out Of The Errors In The Trusts, On The Ground That The Insureds Knew Or Reasonably Could Have Foreseen That Their Acts, Errors, Or Omissions Could Be The Basis Of A Claim**

71. Navigators repeats and incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint.

72. As described above, the Policy does not provide coverage with respect to:

(i) any Claim arising out of any acts, errors, or omissions which took place prior to the effective date of this insurance, if any Insured on the effective date knew or could have reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a Claim[.]

73. The "effective date" of the Policy is March 15, 2006.

74. By no later than November 30, 2005, Dr. Bilafer advised the Firm of the errors in the Trusts, Dr. Bilafer requested that the Firm remedy the errors, and the Firm admitted that it had committed errors in drafting the 1999 Trusts and agreed to remedy the errors at no cost to Dr. Bilafer.

75. On December 15, 2005, the Firm concluded that the errors could not be remedied by a simple declaration from Dr. Bilafer, and agreed that a formal petition for modification would have to be filed with the court. The Firm agreed that Dr. Bilafer would not be billed for the Firm's legal services for pursuing the modification.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

76. In January 2006, when Martin Bilafer refused to waive the purported conflict of the Firm preparing the petition, the Firm agreed with Dr. Bilafer that the Firm would pay an outside attorney to pursue the petition.

77. On February 5, 2006, Mr. Miller executed a Declaration of Scrivener's Error recounting the numerous errors in the Trusts made by the Firm.

78. Under these circumstances, the Firm and Mr. Miller were aware of "acts, errors, or omissions which took place prior" to the Policy's March 15, 2006 "effective date," which they "knew or could have reasonably foreseen… might be expected to be the basis of a Claim." Indeed, they had admitted to committing the "acts, errors, or omissions" by no later than November 2005.

79. By reason of the foregoing, Navigators is entitled to a judgment declaring that the Policy provides no coverage for claims arising out of the errors in the Trusts.

Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

## COUNT IV

**Navigators Is Entitled To A Judicial Declaration That There Is No Coverage For Claims Arising Out Of The Errors In The Trusts, On The Ground That The Insureds Breached Their Duty To Assist And Cooperate With Navigators**

80. Navigators repeats and incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint.

81. As described above, the Policy contractually obligates the insureds *not to* "admit liability, make any payment, assume any obligation, incur any expense… without the consent" of Navigators.

82. Here, the Firm admitted in writing that it made multiple errors in drafting the Trusts.

83. After admitting its liability, the Firm assumed the obligation to correct those errors, including pursuing a petition for modification.

84. The Firm then assumed the expense of retaining an outside attorney to pursue that petition.

85. The Firm then entered into a tolling agreement with Judith Doyle's five children with respect to any claims they may have against the Firm for its admitted errors in drafting the Trusts.

86. The Firm took all of these actions *before* ever providing notice of this matter to Navigators, much less before obtaining Navigator's consent.

87. The Firm's actions have prejudiced Navigators with respect to the defense and possible resolution of this matter.

88. By reason of the foregoing, Navigators is entitled to a judgment declaring that the Policy provides no coverage for claims arising out of the errors in the Trusts.

## COUNT V

**Navigators Is Entitled To A Judicial Declaration That It Is Entitled to Repayment For Defense Costs Paid By Navigators**

89. Navigators repeats and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint.

90. As described above, Navigators is entitled to rescind the Policy thereby precluding all coverage. Alternatively, the Policy does not provide coverage for claims arising out of the errors in the Trusts.

91. Navigators has agreed to provide a defense for the Firm and Mr. Miller, subject to a complete reservation of rights, including the right to seek repayment of any defense costs or other amounts paid by Navigators.

92. Accordingly, Navigators seeks a declaration that the Firm and Mr. Miller must repay Navigators for all amounts paid on their behalf by Navigators.

WHEREFORE, Plaintiff NIC Insurance Company requests that the Court enter judgment against Defendants as follows:

(1) A judicial determination that Navigators is entitled to rescission of the Policy, that the Policy is void *ab initio* and of no legal force or effect whatsoever, and that Navigators

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

has no obligation to provide defense or indemnity coverage for any claim that may be made against the Firm, Mr. Miller or any other Insured.

(2) Alternatively, enter judgment that the Policy does not provide coverage for claims arising out of the errors in the Trusts, and that Navigators therefore owes no duty to defend or indemnify the Firm or Mr. Miller against those claims;

(3) Enter judgment that the Firm and Mr. Miller must repay Navigators for amounts paid on their behalf by Navigators;

(4) Award Navigators its costs incurred herein; and

(5) Award Navigators all other relief to which it may be entitled.

ERIK M. PRITCHARD
ROSS, DIXON & BELL, LLP

Dated: March 19, 2008

By: ______________________
Erik M. Pritchard

*Attorneys for Plaintiff*
*NIC Insurance Company*

ROSS, DIXON & BELL, LLP
5 PARK PLAZA, SUITE 1200
IRVINE, CA 92614-8592

EXHIBIT A

**Navigators**
*One Penn Plaza – 55th Floor*
*New York, NY 10119*

March 8, 2006

Page 1 of 2

To: Dave Weller
AmWINS
Los Angeles, CA

From: Godfrey H. Brown
Phone: 212 613 4261
Fax: 212 613 4302

**Renewal Indication Letter**

Re: **Miller Monson Peshel Polacek & Hoshaw**
San Diego, CA

We are pleased to authorize the following indication for Lawyers Professional Indemnity insurance

**Policy Number: N/A**
**Insurance Carrier: NIC Insurance Company**
**Form: As Expiring**
**NOT Admitted**
**Claims Made Form**
**Rating: AM Best: "A" Excellent S&P: "A" Strong**

| **Option 1** | | |
|---|---|---|
| **Limit:** | **$5,000,000** | each claim, including costs & expenses |
| | **$5,000,000** | aggregate including costs & expenses |
| **Deductible:** | **$50,000** | each claim, including costs & expenses |
| **Premium:** | **$162,486.00** | **+ applicable surplus lines taxes & fees** |
| **Policy Period:** | 03/15/07 to 03/15/07 | |

**II. The following terms will be added to the policy:**

1. Retroactive Date: As Expiring
2. Service of Suit (in form)
3. 12 months unilateral discovery period at 100% additional premium (in form)
4. SEC Exclusion (in form)
5. 25% Minimum Earned Premium Endorsement
6. War/Terrorism Exclusion Alternative Dispute Resolution Endorsement – As Expiring
7. Investment Advice Exclusion
8. Lawyer Ralph Gano Miller (retired) Limitation date (13th March 2003) – As Expiring
9. Mold Exclusion
10. OFAC Endorsement

**** This renewal indication and/or binder is conditioned upon and subject to no new claims or potential claims being reported under the expiring Navigators lawyers professional liability policy.**

**III Subject to the receipt, review and underwriter acceptance of the following additional information prior to binding:**

1) **Fully Executed Navigators Proposal Form with original signature**
2) **Confirmation that the applicant has no involvement with, or if so, details of the following: Class Actions, Medical Malpractice Cases or Mold Litigation**
3) **Updated claim information (payments & reserves)**

This authorization expires: 7 days from the date of this indication

Brokerage Commission: 15%

**It is your agency's/brokerage's responsibility to conform with the Laws & Regulations of the applicable jurisdiction, including, but not limited to, payment of premium, taxes, procuring of affidavits and compliance with surplus lines laws.**

This indication is strictly conditioned upon no material change in the risk (including but not limited to claims or potential claims), between the date of this letter and the inception date of the proposed policy. The Insured is required to advise the potential Insurer of any changes immediately and prior to binding the coverage. In the event of such change in risk, the Insurer may in its sole discretion, whether or not this indication has been already accepted by the Insured, modify and/or withdraw this indication.

Sincerely,

Godfrey H. Brown
Navigators-Pro

**Navigators**
*One Penn Plaza – 55th Floor*
*New York, NY 10119*

March 10, 2006

Page 1 of 2

To: Dave Weller
AmWINS
Los Angeles, CA

From: Godfrey H. Brown
Phone: 212 613 4261
Fax: 212 613 4302

**Renewal Indication Letter**

Re: **Miller Monson Peshel Polacek & Hoshaw**
San Diego, CA

We are pleased to authorize the following indication for Lawyers Professional Indemnity insurance

**Policy Number: N/A**
**Insurance Carrier: NIC Insurance Company**
**Form: As Expiring**
**NOT Admitted**
**Claims Made Form**
**Rating: AM Best: "A" Excellent S&P: "A" Strong**

**Option 1**

| | | |
|---|---|---|
| **Limit:** | **$5,000,000** | each claim, including costs & expenses |
| | **$5,000,000** | aggregate including costs & expenses |
| **Deductible:** | **$50,000** | each claim, including costs & expenses |
| **Premium:** | **$162,486.00** | **+ applicable surplus lines taxes & fees** |
| **Policy Period:** | 03/15/07 to 03/15/07 | |

**II. The following terms will be added to the policy:**

1. Retroactive Date: As Expiring
2. Service of Suit (in form)
3. 12 months unilateral discovery period at 100% additional premium (in form)
4. SEC Exclusion (in form)
5. 25% Minimum Earned Premium Endorsement
6. War/Terrorism Exclusion Alternative Dispute Resolution Endorsement – As Expiring
7. Investment Advice Exclusion
8. Lawyer Ralph Gano Miller (retired) Limitation date (13th March 2003) – As Expiring
9. Mold Exclusion
10. OFAC Endorsement
11. Bi-Lateral Discovery Endorsement

**** This renewal indication and/or binder is conditioned upon and subject to no new claims or potential claims being reported under the expiring Navigators lawyers professional liability policy.**

**III Subject to the receipt, review and underwriter acceptance of the following additional information prior to binding:**

1) **Fully Executed Navigators Proposal Form with original signature**
2) **Confirmation that the applicant has no involvement with, or if so, details of the following: Class Actions, Medical Malpractice Cases or Mold Litigation**
3) **Updated claim information (payments & reserves)**

This authorization expires: 7 days from the date of this indication

Brokerage Commission: 15%

**It is your agency's/brokerage's responsibility to conform with the Laws & Regulations of the applicable jurisdiction, including, but not limited to, payment of premium, taxes, procuring of affidavits and compliance with surplus lines laws.**

This indication is strictly conditioned upon no material change in the risk (including but not limited to claims or potential claims), between the date of this letter and the inception date of the proposed policy. The Insured is required to advise the potential Insurer of any changes immediately and prior to binding the coverage. In the event of such change in risk, the Insurer may in its sole discretion, whether or not this indication has been already accepted by the Insured, modify and/or withdraw this indication.

Sincerely,

Godfrey H. Brown
Navigators-Pro

SCF05_6739

**Navigators**
*One Penn Plaza – 55th Floor*
*New York, NY 10119*

March 14, 2006

Page 1 of 2

To: Dave Weller
AmWINS
Los Angeles, CA

From: Godfrey H. Brown
Phone: 212 613 4261
Fax: 212 613 4302

**Renewal Binder Letter**

Re: **Miller Monson Peshel Polacek & Hoshaw**
San Diego, CA

We are pleased to authorize the following renewal binder for Lawyers Professional Indemnity insurance

**Policy Number: NY06LPL870198NC**
**Insurance Carrier: NIC Insurance Company**
**Form: As Expiring**
**NOT Admitted**
**Claims Made Form**
**Rating: AM Best: "A" Excellent S&P: "A" Strong**

**Option 1**

| | | |
|---|---|---|
| **Limit:** | **$5,000,000** | each claim, including costs & expenses |
| | **$5,000,000** | aggregate including costs & expenses |
| **Deductible:** | **$50,000** | each claim, including costs & expenses |
| **Premium:** | **$162,486.00** | **+ applicable surplus lines taxes & fees** |
| **Policy Period:** | 03/15/06 to 03/15/07 | |

**II. The following terms will be added to the policy:**

1. Retroactive Date: 03/15/1961
2. Service of Suit (in form)
3. 12 months bi-lateral discovery period at 200% additional premium
4. SEC Exclusion (in form)
5. 25% Minimum Earned Premium Endorsement
6. War/Terrorism Exclusion
7. Alternative Dispute Resolution Endorsement – As Expiring
8. Investment Advice Exclusion
9. Lawyer Ralph Gano Miller (retired) Limitation date (13th March 2003) – As Expiring
10. Mold Exclusion
11. OFAC Endorsement

**** This renewal indication and/or binder is conditioned upon and subject to no new claims or potential claims being reported under the expiring Navigators lawyers professional liability policy.**

8CF05_6739



III **Subject to the receipt, review and underwriter acceptance of the following additional information prior to binding:**

1) ***Fully Executed Navigators Proposal Form with original signature***
2) ***Review of updated claim information (payments & reserves)***

Brokerage Commission: 15%

**In order to complete the underwriting process, we require that you send us the additional information requested at the beginning of this letter. We are not required to bind coverage prior to our receipt, review and underwriting approval of the above information. However, if we do bind coverage prior to such approval, it shall be for a temporary period of not more than 30 days. Such temporary binding of coverage shall be void ab initio ("from the beginning") if we have not received, reviewed and approved in writing such materials within 30 days from the effective date of the temporary binder. This 30 day temporary conditional binder may be extended only in writing signed by the Insurer. Payment of premium shall not operate to extend the binding period or nullify the automatic voiding as described here.**

**It is your agency's/brokerage's responsibility to conform with the Laws & Regulations of the applicable jurisdiction, including, but not limited to, payment of premium, taxes, procuring of affidavits and compliance with surplus lines laws.**

**Please note that if between the date of this letter and the effective date of binding coverage there exists any material changes in the information (including but not limited to claims or potential claims) originally submitted or subsequently requested by the Insurer, the applicant is required to advise the potential Insurer immediately and prior to binding the coverage. The potential Insurer fully reserves its rights with respect to the underwriting acceptance or denial of the account in the event of such a material change in information.**

Sincerely,

Godfrey H. Brown
Navigators-Pro

8CF05_6738

NIC INSURANCE COMPANY

PRIMARY LAWYERS

PROFESSIONAL LIABILITY INSURANCE

COPY

8CF05_6738

# DECLARATIONS

Attaching to and forming part of
LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY NUMBER

NY06LPL870198NC

This Insurance is effected with
NIC Insurance Company

THIS IS A CLAIMS-MADE PROFESSIONAL LIABILITY INSURANCE POLICY. PLEASE READ CAREFULLY.

1. NAMED INSURED: Miller, Monson, Peshel, Polacek & Hoshaw

   ADDRESS: 501 West Broadway, Suite 700
   San Diego, CA 92101-3563

2. PERIOD OF INSURANCE: FROM: March 15, 2006 TO: March 15, 2007
   12:01AM STANDARD TIME AT THE ADDRESS SHOWN IN NUMBER 1 ABOVE.

3. LIMIT OF LIABILITY

   (a) $5,000,000 Each and every Claim - including Claims Expenses

   (b) $5,000,000 Annual Aggregate - including Claims Expenses

4. DEDUCTIBLE

   $50,000 Each Claim deductible-including Claims Expenses

5. PREMIUM $162,486.00

6. RETROACTIVE DATE: March 15, 1961

7. NOTICE OF CLAIM: NIC Insurance Company
   ATTN: Navigators Pro Claims Dept
   One Penn Plaza
   55th Floor
   New York, NY, 10119

8CF05_6738

8. NOTICE OF ELECTION: AmWINS Insurance Brokerage of California
601 South Figueroa Street, Suite 2750
Los Angeles, CA 90017

9. DATE OF APPLICATION: March 14, 2006

10. ENDORSEMENTS ATTACHED AT ISSUANCE:
1) Bi-Lateral Discovery
2) Minimum Earned Premium Endorsement
3) War, Military Action & Terrorism Exclusion
4) Alternative Dispute Resolution Endorsement
5) Investment Advice Exclusion
6) Lawyer Miller Limitation
7) Mold Exclusion
8) OFAC Endorsement
9) Partnership Valuation Endorsement

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

Authorized Representative

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative.**

Bradley D. Wiley — SECRETARY

[signature] — PRESIDENT

# LAWYERS PROFESSIONAL LIABILITY INSURANCE

**NOTICE:** This is a claims made form. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance policy is limited to liability for only those Claims that are first made against the Insured and reported to the Company while the insurance is in force. The Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the deductible. Please review the coverage afforded under this insurance policy carefully and discuss the coverage hereunder with your insurance agent or broker.

## I Insuring Agreements

NIC Insurance Company (hereinafter the "Company") agrees with the Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the application which is made a part of this insurance policy (hereinafter "policy" or "insurance") and subject to the Limit of Liability, exclusions, conditions and other terms of this insurance:

### A Coverage

To pay on behalf of the Insured Damages and Claims Expenses which the Insured shall become legally obligated to pay because of any Claim or Claims, including Claim(s) for Personal Injury as hereafter defined, first made against the Insured and reported to the Company during the Period of Insurance or Extended Reporting Period, arising out of any act, error or omission of the Insured in rendering or failing to render professional services for others in the Insured's capacity as a lawyer, Fiduciary or Notary Public, but solely for acts on behalf of the Named Insured designated in Item 1 of the Declarations and caused by the Insured, except as excluded or limited by the terms, conditions and exclusions of this policy.

### B Defense and Settlement (Included in the Limit of Liability)

1 The Company shall have the right and duty to defend, subject to the Limit of Liability, any Claim against the Insured seeking Damages which are payable under the terms of this insurance, even if any of the allegations of the Claim are groundless, false or fraudulent.

2 It is agreed that the Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the deductible.

3 The Company shall have the right to make any investigation it deems necessary, including, without limitation, any investigation with respect to the application and statements made in the application and with respect to coverage.

8CF05_6738

4 If the Insured shall refuse to consent to any settlement or compromise recommended by the Company and acceptable to the claimant and elects to contest the Claim, the Company's liability for any Damages and Claims Expenses shall not exceed the amount for which the Claim could have been settled, less the remaining deductible, plus the Claims Expenses incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and the Company shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

5 It is further provided that the Company shall not be obligated to pay any Damages or Claims Expenses, or to undertake or continue defense of any suit or proceeding after the applicable limit of the Company's liability has been exhausted by payment of Damages or Claims Expenses or after deposit of the applicable policy limit in a court of competent jurisdiction, and that upon such payment, the Company shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

## II Definition of Insured

Each of the following is an Insured under this insurance to the extent set forth below:

(a) if the Named Insured designated in Item 1 of the Declarations is an individual, the person so designated but only with respect to the conduct of a law practice of which the individual is the sole proprietor;

(b) if the Named Insured designated in Item 1 of the Declarations is a partnership, the partnership so designated.

(c) any lawyers who are partners in the Named Insured including any incorporated partners and their shareholders but solely for acts on behalf of the Named Insured designated in Item 1 of the Declarations;

(d) if the Named Insured designated in Item 1 of the Declarations is a Professional Corporation or Professional Association, the Professional Corporation or Professional Association so designated.

(e) any lawyers who are stockholders or members of a Professional Corporation or Professional Association but solely for acts on behalf of such Named Insured;

(f) any lawyer acting as "of counsel", but solely for acts on behalf of the Named Insured designated in Item 1 of the Declarations;

(g) any employed lawyer or other employee but solely for acts on behalf of the Named Insured designated in Item 1 of the Declarations;

(h) any person who previously qualified as an Insured under (c), (e), (f) or (g) above prior to the termination of the required relationship with Named Insured, but solely for acts on behalf of the Named Insured designated in Item 1 of the Declarations;

(i) any partnership, Professional Corporation or Professional Association, advised in writing to the Company, of which the Named Insured is the successor;

(j) any lawyer who during the Period of Insurance becomes a partner, member, stockholder or employee of the Named Insured but solely for acts on behalf of the Named Insured designated in Item 1 of the Declarations;

(k) the estate, heirs, executors, administrators, assigns and legal representatives of any Insured in the event of such Insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such Insured would otherwise be provided coverage under this insurance.

III **Territory**

This insurance applies to acts, errors or omissions which take place anywhere in the world provided that Claim is first made against the Insured within the United States of America, its territories or possessions or Canada during the Period of Insurance or Extended Reporting Period when purchased in accordance with Clause IX.

IV **Exclusions**

The coverage under this insurance does not apply to Damages or Claims Expenses incurred with respect:

(a) to any Claim arising out of any criminal, dishonest, fraudulent or malicious act, error or omission of any Insured, committed with actual, criminal, dishonest, fraudulent or malicious purpose or intent. However, notwithstanding the foregoing, the insurance afforded by this policy shall apply to Claims Expenses incurred in defending any such Claim or circumstance which might lead to a Claim, but shall not apply to any Damages which the Insured might become legally obligated to pay;

(b) to punitive or exemplary damages, fines, penalties, sanctions or any damages which are a multiple of compensatory damages, except that if a Claim shall have been brought against the Insured seeking both compensatory and either punitive or exemplary damages, fines, penalties, sanctions or damages which are a multiple of compensatory damages, then any coverage which may be afforded by this policy will apply to any Claims Expenses incurred, without liability, however, for such punitive or exemplary damages, fines, penalties, sanctions or damages which are a multiple of compensatory damages;

(c) to any Claim by one Insured under this insurance against another Insured under this insurance unless it arises out of an act, error or omission committed or alleged to

have been committed by such Insured in rendering or failing to render professional services;

(d) to any Claim arising out of bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

(e) to any loss sustained by an Insured as a beneficiary or distributee of any trust or estate;

(f) to any Claim arising out of any Insured's activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the Named Insured;

(g) to any Claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in Item 1 of the Declarations, which is owned by any Insured or which is directly or indirectly controlled, operated or managed by any Insured in a non-fiduciary capacity;

(h) to any Claim or circumstance which might lead to a Claim in respect of which any Insured has given notice to the insurer of any other policy in force previous to the effective date of this policy;

(i) to any Claim arising out of any acts, errors, or omissions which took place prior to the effective date of this insurance, if any Insured on the effective date knew or could have reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a Claim;

(j) to any Claim arising out of any Insured's capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof unless the Insured is deemed an employee solely by virtue of rendering legal services to such governmental body, the remuneration for which services inures to the benefit of the Named Insured;

(k) to any Claim arising out of any Insured's activities and/or capacity as a Fiduciary under the Employee Retirement Income Security Act of 1974 and its amendment or any regulation or order issued pursuant thereto, except if the Insured is deemed to be a Fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

(l) to any Claim seeking the return or reimbursement of legal fees, costs or expenses paid to the Insured.

m) to any Claim directly or indirectly brought about by, arising out of, or attributable to any actual or alleged violation of the Racketeer Influenced and Corrupt Organization

8CF05_6738

Act, 18 USC Sections 1961 et seq., or any comparable state law, and any amendments thereto, or any rules or regulations promulgated thereunder. Notwithstanding the foregoing, the insurance afforded by this policy shall apply to Claims Expenses incurred in defending any such Claim, but shall not apply to any punitive or exemplary damages, fines, penalties sanctions, or any damages which are a multiple of compensatory damages that the Insured might become legally obligated to pay;

n) to any Claim arising out of or related to, directly or indirectly, any act, error or omission involving any security or any activities or transactions subject or claimed to be subject to the Securities Act of 1933, The Securities Exchange Act of 1934, The Public Utility Holding Company Act of 1935, The Trust Indenture Act of 1939, The Investment Company Act of 1940 or the Investment Advisors Act of 1940 or any purchase, sale or offering of any security to or from the public which is subject to any State Blue Sky or Securities Law.

If a retroactive date is applicable to this coverage it will appear at Item 6 of the Declarations and the following exclusion shall apply:

o) to any Claim or circumstance that might lead to a Claim arising out of any act, error or omission which took place, or is alleged to have taken place, prior to the retroactive date as set forth in Item 6 of the Declarations.

V. **Conditions**

Definitions: Whenever used in this policy:

A "Personal Injury" means:

(1) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of the right of private occupance, or malicious prosecution;

(2) libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

B "Claims Expenses" means:

(1) necessary and reasonable fees charged by an attorney designated by the Company and consented to by the Named Insured, with such consent not to be unreasonably withheld; and

(2) all other necessary and reasonable fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith, if incurred by the Company, or by the Insured with the written consent of the Company.

8CF05_6738

(3) Claims Expenses does not include any salary, overhead or other charges by the Insured for any time spent in cooperating in the defense and investigation of any Claim or circumstance which might lead to a Claim notified under this insurance.

C "Period of Insurance" means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of this insurance and specifically excludes any Extended Reporting Period hereunder.

D "Extended Reporting Period", if applicable, means the 12 month period of time after the end of the Period of Insurance for reporting Claims arising out of acts, errors or omissions which take place prior to the end of the Period of Insurance and otherwise covered by this insurance.

E "Claim" means a demand received by any Insured for money or services including the service of suit or institution of arbitration proceedings against the Insured.

F "Fiduciary" except as set forth in Clause IV(k), means an Insured's capacity as an administrator, conservator, executor, guardian, trustee, receiver, escrow agent or any similar capacity.

G "Damages" means a monetary judgment, award or settlement.

Whenever the singular form of a word is used herein, the same shall include the plural when required by context.

VI **Limit of Liability**

A The Limit of Liability stated in the Declarations as "each and every claim" is the limit of the Company's liability for all Damages and Claims Expenses arising out of the same, related or continuing professional services without regard to the number of Insureds, Claims or claimants.

B The Limit of Liability stated in the Declarations as "aggregate" is the total limit of the Company's liability for all Damages and Claims Expenses arising out of Claims or circumstances which might lead to a Claim first made and reported to the Company during the Period of Insurance or during the Extended Reporting Period and Claims arising out of the same, related or continuing professional services as such Claims or circumstances which might lead to a Claim.

C The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of the Company for the Period of Insurance.

VII **Deductible**

The deductible amount stated in the Declarations shall be satisfied by payments by the Insured of Damages and Claims Expenses resulting from each Claim first made and reported to the Company during the Period of Insurance and the Extended Reporting Period as a condition precedent to the payment by the Company of any amounts hereunder, and the Company shall be liable only for amounts in excess of such Deductible subject to the Company's total liability not exceeding the limit set forth in Item 3 of the Declarations. The Insured shall make direct payments within the deductible to appropriate other parties designated by the Company.

VIII **Innocent Insured**

A Whenever coverage under this insurance would be excluded, suspended or lost:

(1) because of any exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by any Insured, and with respect to which any other Insured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, or

(2) because of noncompliance with Clause XI Notice of Claim or Circumstance That May Lead to a Claim, with respect to which any other Insured shall be in default solely because of the failure to give such notice or concealment of such failure by one or more Insureds responsible for the loss or damage otherwise insured hereunder,

the Company agrees that such insurance as would otherwise be afforded under this policy shall cover and be paid with respect to those Insureds who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of (a) one or more of the acts, errors or omissions described in any such exclusion; or (b) such failure to give notice, provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of Clause VIII shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured to comply therewith.

B With respect to this provision, the Company's obligation to pay in such event shall be in excess of the deductible and in excess of the full extent of any assets in the Named Insured of any Insured to whom the exclusion applies. In no event shall the Company's obligation to pay exceed the Limit of Liability stated in Item 3 of the Declarations.

IX **Extended Reporting Endorsement**

A In the event of cancellation or non-renewal of this insurance by the Company, the Named Insured designated in Item 1 of the Declarations shall have the right, upon

8CF05_6738

payment in full and not proportionally or otherwise in part of 100% of the premium set forth in Item 5 of the Declarations to have issued an endorsement providing a 12 month Extended Reporting Period for Claims first made against any Insured and reported to the Company during the Extended Reporting Period, subject to the conditions set forth in the definition of Extended Reporting Period herein. In order for the Named Insured to invoke the Extended Reporting option, the payment of the premium for the Extended Reporting Period must be paid to the Company within 30 days of the non-renewal or cancellation.

B The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of the Company for the Period of Insurance.

C The quotation by the Company of a different premium or deductible or Limit of Liability or changes in policy language for the purpose of renewal shall not constitute a refusal to renew by the Company.

D The right to the Extended Reporting Period shall not be available to the Named Insured where cancellation or non-renewal by the Company is due to non-payment of premium or failure of an Insured to pay such amounts in excess of the applicable Limit of Liability or within the amount of the applicable deductible.

E All notices and premium payments with respect to the Extended Reporting option shall be directed to the Company through the entity named in Item 8 of the Declarations.

F At the commencement of the Extended Reporting Period the entire premium shall be deemed earned, and in the event the Named Insured terminates the Extended Reporting Period for any reason prior to its natural expiration, the Company will not be liable to return any premium paid for the Extended Reporting Period.

## X Other Insurance

This insurance shall apply in excess of any other valid and collectible insurance available to any Insured, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this policy.

## XI Notice of Claim, or Circumstance That May Lead to a Claim

A If any Claim is made against the Insured, the Insured shall immediately forward to the Company through persons named in Item 7 of the Declarations every demand, notice, summons or other process received by him or his representative.

B If during the Period of Insurance the Insured first becomes aware of any act, error or omission that could reasonably be the basis for a Claim it must give written notice to the Company through persons named in Item 7 of the Declarations during the Period of Insurance of:

(1) the specific act, error or omission; and

(2) the injury or damage which may result or has resulted from the act, error or omission; and

(3) the circumstance by which the Insured first became aware of the act, error or omission.

Any subsequent Claim made against the Insured which is the subject of the written notice shall be deemed to have been made at the time written notice was first given to the Company.

C A Claim shall be considered to be reported to the Company when notice is first given to the Company through persons named in Item 7 of the Declarations of the Claim or of an act, error or omission which could reasonably be expected to give rise to a Claim.

D All Claims arising out of the same, continuing or related professional services shall be considered a single Claim and deemed to have been made at the time the first of the related Claims is reported to the Company and shall be subject to one Limit of Liability.

E In the event of non-renewal of this insurance by the Company, the Insured shall have thirty (30) days from the expiration date of the Period of Insurance to notify the Company of a Claim made against the Insured during the Period of Insurance which arises out of any act, error or omission which took place prior to the termination date of the Period of Insurance and otherwise covered by this insurance.

F If any Insured shall make any claim under this policy knowing such claim to be false or fraudulent, as regards amount or otherwise, this policy shall become null and void, and all coverage hereunder shall be forfeited.

## XII Assistance and Cooperation of the Insured

The Insured shall cooperate with the Company in all investigations, including investigations regarding the application and coverage under this insurance and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization other than an employee of any Insured who may be liable to the Insured because of acts, errors or omissions with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any Claim without the consent of the Company.

8CF05_6738

XIII **Action Against The Company**

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment or award against the Insured after actual trial or arbitration or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment, award or written agreement shall thereafter be entitled to make a Claim under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this insurance to join the Company as a party to an action or other proceeding against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

XIV **Subrogation**

In the event of any payment under this insurance, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the payment of Damages by the Company to prejudice such rights.

XV **Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this insurance or estop the Company from asserting any right under the terms of this insurance; nor shall the terms of this insurance be waived or changed, except by endorsement issued to form a part of this insurance, signed by the Company.

XVI **Change in Membership of Firm**

Any additions to the list of lawyers in the application which take place during the Period of Insurance must be immediately reported to the Company in the event that:

1) the total number of new lawyers brought into or added to the firm during the Period of Insurance increases the number of lawyers as stated in the application for coverage by 5 persons or 10% of the total number of lawyers listed in the application, whichever amount is greater; or

2) any lawyer brought into or added to the firm during the Period of Insurance had been

8CF05_6738

or was in the process of being reprimanded or censured by any court or bar association or disbarred or prohibited from practicing in a specified area of law or before any court or administrative agency; or

3) prior to joining the firm, any Claim had been made against the lawyer or the lawyer had become aware of circumstances that might lead to a Claim.

The Company expressly reserves the right to demand a premium adjustment in the event that any additions to the list of lawyers in the application for this insurance meet the criteria set forth in the paragraphs immediately above.

**XVII Mergers and Acquisitions**

The Named Insured shall be required to give written notice to the Company prior to the completion of a merger or acquisition by or of the Named Insured, and the Company expressly reserves the right to demand a premium adjustment if this insurance is to remain in force subsequent to any merger or acquisition.

**XVIII Assignment**

The interest hereunder of any Insured is not assignable. If the Insured shall die or be adjudged incompetent, this insurance shall cover the Insured's legal representative as the Insured with respect to liability previously incurred and covered by this insurance.

**XIX Cancellation**

A This policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This insurance may be cancelled by the Company by mailing to the Named Insured at the address shown in the Declarations written notice stating when not less than 60 days thereafter such cancellation shall be effective. However, if the Company cancels this insurance because the Insured has failed to pay a premium when due this insurance may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured at the address shown in the Declarations stating when not less than 10 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Period of Insurance. Delivery (where permitted by law) of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

B If the Named Insured cancels this insurance, earned premium shall be computed in accordance with the attached short rate table and procedure. If the Company cancels this insurance, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a

8CF05_6738

condition of cancellation.

**XX Entire Contract**

By acceptance of this policy the Insured agrees that the statements in the Declarations and application are its agreements and representations, that this insurance is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company relating to this insurance.

**XXI Service of Suit**

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. The foregoing shall not constitute a waiver of the right of the Company to remove, remand, or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state of United States pertinent hereto. In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates the President of NIC Insurance Company, One Penn Plaza, 55th Floor, New York, NY 10119, as the person to who the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

8CF05_6738

**ENDORSEMENT NO.: 1**

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**BI-LATERAL DISCOVERY**

It is agreed that **Section IX, Extended Reporting Period**, is deleted in its entirety and replaced with the following:

A. The Named Insured designated in Item 1 of the Declarations may have the right, upon payment in full and not proportionally or otherwise in part of an additional premium to have issued an endorsement providing a 12 month Extended Reporting Period for Claims first made against any Insured and reported to the Company during the Extended Reporting Period, subject to the conditions set forth in the definition of Extended Reporting Period herein. In order for the Named Insured to invoke the Extended Reporting option, the payment of the premium for the Extended Reporting Period must be paid to the Company within 30 days of the non-renewal or cancellation;

B. The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of the Company for the Period of Insurance;

C. In the event of cancellation or non-renewal of this Policy by the Company, the appropriate additional premium and corresponding Extended Reporting Period shall be 100% of the Premium shown in item 5 of the Declarations for a 12 month Extended Reporting Period;

D. In the event of cancellation or non renewal of this Policy by the Insured, the appropriate additional premium and corresponding Extended Reporting Period shall be 200% of the Premium shown in item 5 of the Declarations for a 12 month Extended Reporting Period;

E. The quotation by the Company of a different premium or deductible or Limit of Liability or changes in policy language for the purpose of renewal shall not constitute a refusal to renew by the Company;

F. The right to the Extended Reporting Period shall not be available to the Named Insured where cancellation or non-renewal by the Company is due to non-payment of premium or failure of an Insured to pay such amounts in excess of the applicable Limit of Liability or within the amount of the applicable deductible;

G. All notices and premium payments with respect to the Extended Reporting option shall be directed to the Company through the entity named in Item 8 of the Declarations;

H. At the commencement of the Extended Reporting Period the entire premium shall be deemed earned, and in the event the Named Insured terminates the Extended Reporting Period for any reason prior to its natural expiration, the Company will not be liable to return any premium paid for the Extended Reporting Period.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative — Date 4/7/06

8CF05_6738

ENDORSEMENT NO.: 2

This endorsement, effective 12:01 am, March 15, 2006

forms part of policy number: NY06LPL870198NC

issued to: Miller, Monson, Peshel, Polacek & Hoshaw

by: NIC Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

MINIMUM EARNED PREMIUM ENDORSEMENT

In the event that this policy is cancelled by the Insured, the policy premium is subject to a minimum earned premium of 25% of the total premium. The minimum 25% earned premium shall apply in all cases except cancellation at the direction of the Company.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

4/7/06
Date

8CF05_6738

ENDORSEMENT NO.: 3

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**WAR, MILITARY ACTION AND TERRORISM EXCLUSION**

It is agreed that **Section IV., Exclusions**, is amended by adding the following exclusion:

where all or part of any **Claim**, is based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any:

(a) war including undeclared war, civil war, insurrection, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization;

(b) warlike action by a military force (including, but not limited to, the uniformed armed forces, militia, police, state security or national guard), including but not limited to the response to or deterrence, combat, retaliation, hindrance or defense of an actual or anticipated attack, by any government, sovereign or other authority using such military force or other agents;

(c) insurrection, rebellion, revolution, usurped power, or similar action taken by any government, sovereign or other authority, or any branch thereof, in the response to or deterrence, combat, retaliation, hindrance or defense of hindrance or defense of those activities described in (a) and (b) above;

(d) acts of terrorism, including but not limited to activities against individuals, entities or property, of any nature involving:

(i) the use or threat of force or violence;

(ii) commission or threat of a dangerous act; or

(iii) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system,

which may (A) cause the intimidation or coercion of a government, sovereign or other authority, or the civilian population or any segment thereof; (B) disrupt of any segment of the economy, or the intent of such acts is to intimidate or coerce a government, sovereign or other authority, or (C) further political ideological, religious, social or economic objectives or to express or oppose any philosophy or ideology. Acts of terrorism shall include, but are not limited to, any act by or on behalf of any government, sovereign or other authority, or any branch thereof (including, but not limited to, the

8CF05_6738

ENDORSEMENT NO.: 3

uniformed armed forces, militia, police, state security, national guard or anti-terrorism agencies) in deterring, responding to, combating or retaliating against terrorism or removing debris from a terrorist attack;

(e) any failure or omission on the part of the **Insureds** to effect and maintain insurance, including, but not limited to, any failure or omission on the part of the **Insureds** to effect and maintain adequate insurance.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

Date 4/7/06

8CF05_6738

**ENDORSEMENT NO.: 4**

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ALTERNATIVE DISPUTE RESOLUTION ENDORSEMENT**

It is hereby noted and agreed that with effect from inception in the event of a claim being handled through Alternative Dispute Resolution methods the deductible is amended to read:

USD 25,000 each and every loss (including claims and expenses) Self Insured Retention

but subject to the Assured having contractual entered into an Alternative Dispute Resolution with the Client at the time of engagement.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

4/7/06

Date

8CF05_6738

ENDORSEMENT NO.: 5

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**INVESTMENT ADVICE EXCLUSION**

The coverage under this insurance does not apply to any Claim based upon or arising out of, directly or indirectly, in whole or in part, any investment or tax opinion, advice or analysis or the performance or failure to perform any Professional Services in relation to any offering, syndication, partnership, tax shelter, tax haven, or tax avoidance arrangement, organization or device.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

4/7/06

Date

8CF05_6738

ENDORSEMENT NO.: 6

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**LAWYER LIMITATION ENDORSEMENT**

this Policy excludes any claim arising from acts performed by lawyer Miller on or after March 13, 2003.

All other terms and conditions of the Policy remain unchanged.

[signature]
Authorized Representative

4/5/06
Date

8CF05_6738

ENDORSEMENT NO.: 7

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**MOLD EXCLUSION**

In consideration for the premium charged, it is hereby understood and agreed that the coverage afforded by this Policy shall not apply to:

A. **CLAIMS** or **CLAIMS EXPENSES** which, either in whole or in part, directly or indirectly, are for, based upon, relate to, or arise out of:

(1) The actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind;

or

(2) Any action taken by any party in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins;

B. Any governmental or regulatory order, requirement, directive, mandate or decree that any party take action in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins;

C. The Company will have no duty or obligation to defend any Insured with respect to any **CLAIM** or governmental or regulatory order, requirement, directive, mandate or decree which, either in whole or in part, directly or indirectly, is for, based upon, relates to, or arises out of the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

Date 4/7/06

8CF05_6738

**ENDORSEMENT NO.: 8**

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

**OFAC ENDORSEMENT**

It is agreed that:

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that any insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative

4/7/06
Date

8CF05_6738

ENDORSEMENT NO.: 9

**This endorsement, effective 12:01 am, March 15, 2006**

**forms part of policy number: NY06LPL870198NC**

**issued to: Miller, Monson, Peshel, Polacek & Hoshaw**

**by: NIC Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PARTNERSHIP VALUATION ENDORSEMENT**

It is hereby understood and agreed that this Policy is extended to include the Assured's "partnership valuation", "business appraisals" and "discount valuation" activities as described in the Assured's letter dated 15th March, 1995 and e-mail dated 19th August, 2003, subject to the following additional exclusions;

(i) to any claim arising from a valuation of partnerships' assets in which the Assured has a direct or indirect interest;
(ii) to any claim arising from or relating to the verification of the authenticity of the partnerships' assets;
(iii) to any claim arising from or relating to the verification of the ownership of a partnerships' assets;
(iv) to any claim arising out of or based upon the decrease in market value arising from market conditions out side the control of the Assured;
(v) to any claim arising, directly or indirectly, out of any warranty or guarantee given, whether implied or actual.

All other terms, clauses and condition remain unaltered.

All other terms and conditions of the Policy remain unchanged.

[signature]
Authorized Representative

5/15/06
Date

EXHIBIT C

COPY

Peter Renwick Thompson (SBN 96187)
836 Chiles Avenue
St. Helena, CA 94574

Telephone: 707-968-9770
Facsimile: 707-968-9771

Attorneys for Premier Trust, a Nevada Corporation, as trustee of the Judith A. Doyle Gift Trust; Judith A. Doyle, individually.

FILED
CIVIL BUSINESS OFFICE 16
CENTRAL DIVISION

07 SEP 27 PM 3:09

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

Premier Trust, a Nevada Corporation, as trustee of the Judith A. Doyle Gift Trust; Judith A. Doyle, individually;

v.

Miller, Monson & Peshel, a partnership of ~~Professional Corporations; Miller, Monson, Peshel, Polacek & Hoshaw, a partnership of~~ Professional Corporations; Ralph Gano Miller, individually and DOES 1-10 inclusive.

No.: 37-2007-00075798-CU-PN-CTL

COMPLAINT FOR DAMAGES FOR PROFESSIONAL NEGLIGENCE

BY FAX

Peter Renwick Thompson, Esq.

**Complaint for Damages for Professional Negligence**

1. Plaintiffs Premier Trust, a Nevada Corporation, as trustee of the Judith A. Doyle Gift Trust was appointed trustee on or about August 23, 2007 and in bringing this suit acts only in its representative capacity as trustee. Judith A. Doyle, is an individual who is a beneficiary of the Judith A. Doyle Gift Trust. Collectively, the above described parties are hereinafter referred to as "plaintiffs".

2. Defendants Miller, Monson & Peshel and its successor in interest, Miller, Monson, Peshel, Polacek & Hoshaw (hereinafter "defendants") are, and at all times mentioned herein, were law firms, doing business in the form of a partnership of Professional Corporations with their principal place of business in the State of California, specifically San Diego. Defendants, as used in this complaint, includes Defendants' employees and/or agents, all of whom were acting within the course and scope of their employment with Defendants so as to make Defendants liable for their actions and conduct. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees and/or agents of Defendants, such individuals at all times acted on behalf of Defendants named in this action, and were acting within the course and scope of their employment with Defendants, so as to make Defendants liable for their actions and conduct.

3. Defendant Ralph Gano Miller (hereinafter collectively referred to as "defendants" along with the defendants named in paragraph 2 above) at all times mentioned herein is an attorney licensed to practice law and practicing law in the State of California, specifically San Diego, and either he individually, or his Professional Corporation was a partner in the law firms named in paragraph 2 above.

4. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 10, and each of them, are unknown to Plaintiffs who therefore sue such Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged. Plaintiffs intend each and every reference to any named Defendants to expressly include reference to all fictitiously named Defendants.

5. Plaintiffs are informed and believe and thereon allege that each Defendant, except as specified herein, was the agent and employee of every other Defendant and, in doing the things herein complained of, acted within the course and scope of their agency and employment.

Peter Renwick Thompson, Esq.

Peter Renwick Thompson, Esq.

6. Defendants held themselves out to the public as attorneys possessed of the requisite skill, experience and competence to represent Mitchell Bilafer in the drafting of his estate plan which would carry out his intents, desires and instructions.

7. In or about 1994, Defendants, by and through their employees and/or agents, began representation of, consulting with and performing legal services for Mitchell Bilafer by preparation of an estate plan for Mitchell Bilafer. Pursuant to the instructions of Mitchell Bilafer, the estate plan drafted by Defendants consisted of the establishment of two irrevocable trusts, one for Mitchell Bilafer's son, Martin Bilafer and one for Mitchell Bilafer's daughter, Judith Doyle, one of the plaintiffs herein. The estate plan in essence provided for a generation skipping trust, with the two trusts each holding 50% of the estate assets and Martin Bilafer and Judith A. Doyle, plaintiff herein, each receiving the income from their respective Gift Trusts during their lives and, upon their deaths, the principal of the estate held evenly by the two trusts would be distributed two-sevenths of Mitchell's estate principal going to Martin's two children and five-sevenths of Mitchell's estate principal going to Judith's five children. The principal of the estate was protected from dissipation so that Mitchell's grandchildren would receive the principal. Although drafted, the estate plan in 1994 was never finalized.

8. In or about 1999, Mitchell Bilafer wanted to finalize his estate plan consistent with the 1994 estate plan and methodology. Again, Defendants were asked by Mitchell Bilafer to draft the estate plan documents, including the trusts, consistent with the 1994 estate plan and methodology. The terms of the 1999 trusts were to be the same as the 1994 trusts. The 1999 trusts were signed by Mitchell Bilafer with the understanding that the 1999 trusts carried out his intent as set forth in paragraph 7 above. Unfortunately, and unbeknownst to the Trustor, Mitchell Bilafer, the provisions of the 1999 trusts, as drafted and signed, differed significantly from the provisions of the 1994 trust and did not carry out the instructions and intent of the Trustor, Mitchell Bilafer. Instead, the 1999 trusts split the principal of Mitchell's estate equally between his two children and thus, Martin's two children were to receive 50% of Mitchell's estate (25% each), and Judith's five children were to receive 50% of Mitchell's estate (10% each). In

addition, Martin was given the right to have principal of both trusts distributed to himself and restrict the income distributed to Judith Doyle, a result Mitchell did not intend, never instructed be done and was the opposite of his stated intent to have Judith Doyle receive a substantial income stream and maintain the entire principal of the estate so that upon the death of Martin and/or Judith, his grandchildren would each receive one-seventh of the principal of his estate.

9. Defendants owed their client, Mitchell Bilafer, the duty to use such professional skill, prudence, diligence and competence as lawyers, and the ordinary skill and capacity commonly possesses and exercised in the performance of the legal work that was undertaken for Mitchell Bilafer. In addition, in holding themselves out as possessing special expertise in the area of estate planning, Defendants owed their client, Mitchell Bilafer, the duty to exercise the skill, prudence, competence and experience of other attorney specialists in the area of estate planning. As a result of the Defendants' representation of Mitchell Bilafer, as set forth above, Defendants had a duty to the Plaintiffs as beneficiaries of the Mitchell Bilafer estate to draft an estate plan which would carry out the intents, desires and instructions of Mitchell Bilafer which would result in the Plaintiffs herein receiving one-seventh of the estate of Mitchell Bilafer rather than ten percent of the estate.

10. Defendants breached their duties to Mitchell Bilafer and Plaintiffs herein by negligently failing to draft the estate plan documents to allow Martin Bilafer to invade the trust principal, thereby reducing the amount of principal that would pass to both trusts and thereafter pass to all seven of the grandchildren of Mitchell Bilafer, and restrict the amount of income distributed to Judith Doyle as lifetime beneficiary of the Judith A. Doyle Gift Trust, as a result of the use of said income and as a result of the reduction of principal from which the trust would receive income and distribute it to Judith Doyle during her life.

11. As a direct and legal result of Defendants negligent acts and omissions, as alleged herein, Plaintiffs have incurred, and continue to incur, significant economic detriment and damages all in an amount to proven at the time of trial herein.

Peter Renwick Thompson, Esq.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For special and consequential damages in an amount to be proven at trial;

3. For such other and further relief deemed appropriate by the Court.

Dated: September 26, 2007

By: /s/
Peter R. Thompson, Esq.,
Attorney for Plaintiffs

Peter Renwick Thompson, Esq.

Peter Renwick Thompson (SBN 96187)
836 Chiles Avenue
St. Helena, CA 94574

Telephone: 707-968-9770
Facsimile: 707-968-9771

Richard P. Doyle, Jr. (SBN 112459)
Howard A. Janssen (SBN 045385)
JANSSEN DOYLE LLP
2540 Camino Diablo, Suite 220
Walnut Creek, CA 94597

Telephone: 925-295-1800
Facsimile: 925-295-1801

Attorneys for Richard P. Doyle, Jr. Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews and Michelle Alessandria

Peter Renwick Thompson, Esq.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| Richard P. Doyle, Jr., Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews and Michelle Alessandria, individually<br><br>v.<br><br>Miller, Monson & Peshel, a partnership of Professional Corporations;<br>Miller, Monson, Peshel, Polacek & Hoshaw, a partnership of Professional Corporations;<br>Ralph Gano Miller, individually and DOES 1-10 inclusive. | No.:<br><br>**COMPLAINT FOR DAMAGES FOR PROFESSIONAL NEGLIGENCE** |

**Complaint for Damages for Professional Negligence**

1. Plaintiffs Richard P. Doyle, Jr., Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews

Peter Renwick Thompson, Esq.

and Michelle Alessandria, (hereinafter "plaintiffs") are individuals who are some of the grandchildren of Mitchell Bilafer and they are the five children of Judith Doyle.

2. Defendants Miller, Monson & Peshel and its successor in interest, Miller, Monson, Peshel, Polacek & Hoshaw (hereinafter "defendants") are, and at all times mentioned herein, were law firms, doing business in the form of a partnership of Professional Corporations with their principal place of business in the State of California, specifically San Diego.

3. Defendants, as used in this complaint, includes Defendants' employees and/or agents, all of whom were acting within the course and scope of their employment with Defendants so as to make Defendants liable for their actions and conduct.

4. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees and/or agents of Defendants, such individuals at all times acted on behalf of Defendants named in this action, and were acting within the course and scope of their employment with Defendants, so as to make Defendants liable for their actions and conduct.

5. Defendant Ralph Gano Miller (hereinafter collectively referred to as "defendants" along with the defendants named in paragraph 2 above) at all times mentioned herein is an attorney licensed to practice law and practicing law in the State of California, specifically San Diego, and either he individually, or his Professional Corporation was a partner in the law firms named in paragraph 2 above. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 10, and each of them, are unknown to Plaintiffs who therefore sue such Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged. Plaintiffs intend each and every reference to any named Defendants to expressly include reference to all fictitiously named Defendants.

6. Plaintiffs are informed and believe and thereon allege that each Defendant, except as specified herein, was the agent and employee of every other Defendant and, in doing the things herein complained of, acted within the course and scope of their agency and employment.

7. Defendants held themselves out to the public as attorneys possessed of the requisite skill, experience and competance to represent Mitchell Bilafer in the drafting of his estate plan which would carry out his intents, desires and instructions.

8. In or about 1994, Defendants, by and through their employees and/or agents, began representation of, consulting with and performing legal services for Mitchell Bilafer by preparation of an estate plan for Mitchell Bilafer.

9. Pursuant to the instructions of Mitchell Bilafer, the estate plan drafted by Defendants consisted of the establishment of two irrevocable trusts, one for Mitchell Bilafer's son, Martin Bilafer and one for Mitchell Bilafer's daughter, Judith Doyle.

10. The estate plan, in essence, provided for a generation skipping trust, with two-sevenths of Mitchell's estate principal going to Martin's two children and five-sevenths of Mitchell's estate principal going to Judith's five children, the plaintiffs herein.

11. The principal of the estate was protected from dissipation so that Mitchell's grandchildren would receive the principal.

12. Although drafted, the estate plan in 1994 was never finalized.

13. In or about 1999, Mitchell Bilafer wanted to finalize his estate plan consistent with the 1994 estate plan and methodology.

14. Again, Defendants were asked by Mitchell Bilafer to draft the estate plan documents, including the trusts, consistent with the 1994 estate plan and methodology. The terms of the 1999 trusts were to be the same as the 1994 trusts.

Peter Renwick Thompson, Esq.

15. The 1999 trusts were signed by Mitchell Bilafer with the understanding that the 1999 trusts carried out his intent that each of the seven grandchildren (specifically the children of Martin and Judith) were to share in the principal of his estate equally, each receiving one-seventh of Mitchell's estate. Unfortunately, and unbeknownst to the Trustor, Mitchell Bilafer, the provisions of the 1999 trusts, as drafted and signed, differed significantly from the provisions of the 1994 trust and did not carry out the instructions and intent of the Trustor, Mitchell Bilafer.

16. Instead, the 1999 trusts split the principal of Mitchell's estate equally between his two children and thus, Martin's two children are to receive 50% of Mitchell's estate (25% each), and Judith's five children are to receive 50% of Mitchell's estate (10% each).

17. In addition, Martin was given the right to have principal of the estate distributed to himself, a result Mitchell did not intend, never instructed be done and was the opposite of his stated intent to maintain the entire principal of the estate so that upon the death of Martin and/or Judith, his grandchildren would each receive one-seventh of the principal of his estate.

18. Defendants owed their client, Mitchell Bilafer, the duty to use such professional skill, prudence, diligence and competence as lawyers, and the ordinary skill and capacity commonly possesses and exercised in the performance of the legal work that was undertaken for Mitchell Bilafer. In addition, in holding themselves out as possessing special expertise in the area of estate planning, Defendants owed their client, Mitchell Bilafer, the duty to exercise the skill, prudence, competence and experience of other attorney specialists in the area of estate planning. As a result of the Defendants' representation of Mitchell Bilafer, as set forth above, Defendants had a duty to the Plaintiffs as beneficiaries of the Mitchell Bilafer estate to draft an estate plan which would carry out the intents, desires and instructions of Mitchell Bilafer which would result in the Plaintiffs herein receiving one-seventh of the estate of Mitchell Bilafer rather than ten percent of the estate.

19. Defendants breached their duties to Mitchell Bilafer and Plaintiffs herein by negligently failing to draft the estate plan documents to maintain the principal of the estate for the benefit of

Peter Renwick Thompson, Esq.

Judith's children (Plaintiffs herein) and to pass principal of the estate in equal one-seventh shares to all grandchildren of Mitchell Bilafer, including the Plaintiffs herein.

20. As a direct and legal result of Defendants negligent acts and omissions, as alleged herein, Plaintiffs have incurred, and continue to incur, significant economic detriment and damages all in an amount to proven at the time of trial herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be proven at trial
2. For special and consequential damages in an amount to be proven at trial;
3. For such other and further relief deemed appropriate by the Court.

Dated: ____________

By: ______________________
Peter R. Thompson, Esq.,
Attorney for Plaintiffs

Peter Renwick Thompson, Esq.

Peter Renwick Thompson, Esq.

## VERIFICATION

We, Richard P. Doyle, Jr. Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews and Michelle Alessandria, declare:

We are the plaintiffs in the above proceeding. We have read the Complaint and know its contents. The matters stated in that document are true of our own knowledge and belief except as to those matters stated on information and belief, and as to those matters, we believe them to be true.

We declare under penalty of perjury under the laws of the State of California that the forogoing is true and correct. Executed on this 13th day of August 2007, at Lafayette, California.

Richard P. Doyle, Jr. ________________________

Deborah J. Doyle, ________________________

Catherine T. Doyle, ________________________

DeAnna L. Andrews, ________________________

Michelle Alessandria, ________________________

EXHIBIT E

Peter Renwick Thompson (SBN 96187)
836 Chiles Avenue
St. Helena, CA 94574

Telephone: 707-968-9770
Facsimile: 707-968-9771

Richard P. Doyle, Jr. (SBN 112459)
Howard A. Janssen (SBN 045385)
JANSSEN DOYLE LLP
2540 Camino Diablo, Suite 220
Walnut Creek, CA 94597

Telephone: 925-295-1800
Facsimile: 925-295-1801

Attorneys for Richard P. Doyle, Jr. Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews and Michelle Alessandria

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

Richard P. Doyle, Jr., Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews and Michelle Alessandria, individually

v.

Miller, Monson & Peshel, a partnership of Professional Corporations;
Miller, Monson, Peshel; Polacek & Hoshaw, a partnership of Professional Corporations;
Ralph Gano Miller, individually; Martin Bilafer, as former Trustee of the Judith Doyle Gift Trust, individually, and DOES 1-10 inclusive.

No.: 37-2007-00073018-CU-PN-CTL

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR PROFESSIONAL NEGLIGENCE, BREACH OF FIDUCIARY DUTY AND NEGLIGENCE**

Peter Renwick Thompson, Esq.

Peter Renwick Thompson, Esq.

**I. First Cause of Action: Damages for Professional Negligence**
**[Miller, Monson Defendants and Ralph Gano Miller, Does 1-10]**

1. Plaintiffs' Richard P. Doyle, Jr., Deborah J. Doyle, Catherine T. Doyle, DeAnna L. Andrews and Michelle Alessandria, (hereinafter "plaintiffs") are individuals who are some of the grandchildren of Mitchell Bilafer; and they are the five children of Judith Doyle.

2. Defendants Miller, Monson & Peshel and its successor in interest, Miller, Monson, Peshel, Polacek & Hoshaw (hereinafter, singularly referred to as "Miller Monson law firm"; and, along with defendant Ralph Gano Miller, collectively referred to as "Attorney Defendants;") are, and at all times mentioned herein, were law firms, doing business in the form of a partnership of Professional Corporations with their principal place of business in the State of California, specifically in the County of San Diego.

3. "Attorney Defendants, as used in this complaint, includes Attorney Defendants' employees and/or agents, all of whom were acting within the course and scope of their employment with Attorney Defendants so as to make Attorney Defendants liable for their actions and conduct; and Does 1-10, inclusive, whose identity has not yet been ascertained and are thereby named by such fictitious names as further hereafter described.

4. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees and/or agents of the Attorney Defendants, such individuals at all times acted on behalf of the Attorney Defendants named in this action, and were acting within the course and scope of their employment with the Attorney Defendants, so as to make the Attorney Defendants liable for their actions and conduct.

5. Defendant Ralph Gano Miller at all times mentioned herein was and is an attorney licensed to practice law and practicing law in the State of California, specifically the County of San Diego, and either he individually, or his Professional Corporation, was a partner in the law firms named in paragraph 2 above.

6. Defendant Martin Bilafer (hereinafter sometimes referred to as "Defendant Bilafer") is a

Peter Renwick Thompson, Esq.

natural person residing in San Mateo County, State of California, the uncle of the plaintiffs, and the former Trustee of the Judith Doyle Gift Trust.

7. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 10, and each of them, are unknown to Plaintiffs who therefore sue such Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged. Plaintiffs intend each and every reference to any named Defendants, or to the Attorney Defendants collectively, to expressly include reference to all fictitiously named Defendants.

8. Plaintiffs are informed and believe and thereon allege that each Attorney Defendant, except as specified herein, was the agent and employee of every other Attorney Defendant and, in doing the things herein complained of, acted within the course and scope of their agency and employment.

9. Attorney Defendants held themselves out to the public as attorneys possessed of the requisite skill, experience and competence to represent Mitchell Bilafer in the drafting of his estate plan in a manner which would carry out his intents, desires and instructions.

10. In or about 1994, the Attorney Defendants, by and through their employees and/or agents, began representation of, consultation with, and the performance of legal services for, Mitchell Bilafer; and they continued doing so by preparation of an estate plan for Mitchell Bilafer.

11. Pursuant to the instructions of Mitchell Bilafer, the estate plan drafted by the Attorney Defendants consisted of the establishment of two irrevocable trusts, one for Mitchell Bilafer's son, Martin Bilafer and one for Mitchell Bilafer's daughter, Judith Doyle.

12. The estate plan, in essence, provided for a generation skipping trust, with two-sevenths of Mitchell's estate principal going to Martin's two children and five-sevenths of Mitchell's estate principal going to Judith's five children, the plaintiffs herein.

Peter Renwick Thompson, Esq.

13. In addition, the estate plan provides that the principal of the estate was protected from dissipation so that Mitchell's grandchildren would receive the principal undiminished.

14. Although drafted, the estate plan in 1994 was never finalized.

15. In or about 1999, Mitchell Bilafer wanted to finalize his estate plan consistent with the 1994 estate plan and methodology.

16. Again, Attorney Defendants were asked by Mitchell Bilafer to draft the estate plan documents, including the trusts, consistent with the 1994 estate plan and methodology. The terms of the 1999 trusts were to be the same as the 1994 trusts.

17. The 1999 trusts were signed by Mitchell Bilafer with the understanding that the 1999 trusts carried out his intent that each of the seven grandchildren (specifically the children of Martin and Judith) were to share in the principal of his estate equally, each receiving one-seventh of Mitchell's estate. Unfortunately, and unbeknownst to the Trustor, Mitchell Bilafer, the provisions of the 1999 trusts, as drafted by the Attorney Defendants, differed significantly from the provisions of the 1994 trust, and did not carry out the instructions and intent of the Trustor, Mitchell Bilafer.

18. Instead, the 1999 trusts, as drafted by the Attorney Defendants, split the principal of Mitchell's estate equally between his two children; and thus, Martin's two children are to receive 50% of Mitchell's estate (25% each), and Judith's five children are to receive 50% of Mitchell's estate (10% each).

19. In addition, Martin was given by the drafting of the 1999 trusts the right to have principal of the estate distributed to himself, a result Mitchell did not intend, never instructed be done, and was in fact the opposite of his stated intent to maintain the entire principal of the estate so that upon the death of Martin and/or Judith, his grandchildren would each receive one-seventh of the principal of his estate undiminished by such distributions.

20. The Attorney Defendants owed their client, Mitchell Bilafer, in the performance of the legal

Peter Renwick Thompson, Esq.

work that was undertaken for him, the duty to use reasonable professional skill, prudence, diligence and competence. In addition, in holding themselves out as possessing special expertise in the area of estate planning, the Attorney Defendants owed their client, Mitchell Bilafer, and other intended beneficiaries the duty to exercise the skill, prudence, competence and experience of other attorney specialists in the area of estate planning. As a result of the Attorney Defendants' representation of Mitchell Bilafer, as set forth above, the Attorney Defendants had a duty to the Plaintiffs as beneficiaries of the Mitchell Bilafer estate to draft an estate plan which would carry out the intents, desires and instructions of Mitchell Bilafer, which would result in each of the Plaintiffs herein receiving one-seventh of the estate of Mitchell Bilafer rather than each receiving ten percent of the estate.

21. The Attorney Defendants breached their duties to Mitchell Bilafer, and thus also to Plaintiffs herein, by negligently failing to draft the estate plan documents so as to maintain the principal of the estate for the benefit of Judith's children (Plaintiffs herein); and by failing to draft the estate documents so as to pass principal of the estate in equal one-seventh shares to all grandchildren of Mitchell Bilafer, including the Plaintiffs herein.

22. As a direct and legal result of the Attorney Defendants negligent acts and omissions, as alleged herein, plaintiffs have incurred, and continue to incur, significant economic detriment and damages all in an amount in excess of Five Million Dollars ($5,000,000), which is within the unlimited jurisdiction of this court, as is to be proven at the time of trial herein.

23. As intended beneficiaries of the legal work of the Attorney Defendants as herein described, plaintiffs properly, as real parties in interest, have brought and now pursue this action, and have standing to do so. Also, as a result of entering into a tolling agreement with the Attorney Defendants running from September 5, 2006 through November 17, 2007, in view of this lawsuit being filed initially on August 14, 2007, Plaintiffs have timely filed suit against the Attorney Defendants.

24. In addition, Thomas Monson, acting on behalf of the Attorney Defendants, and acting within

Peter Renwick Thompson, Esq.

the course and scope of his employment with the Attorney Defendants, represented to Plaintiffs that they were the proper parties with standing to sue the Attorney Defendants for the Attorney Defendants' drafting errors in the Mitchell Bilafer estate plan. Based in part on said representation, the Plaintiffs entered into the specific tolling agreement referenced in paragraph 23 above. As a result of the representation referenced above by Thomas Monson, the Attorney Defendants are now, and should be, estopped from asserting that the Plaintiff beneficiaries do not have standing to sue the Attorney Defendants for the drafting errors in the Mitchell Bilafer estate plan.

25. In the alternative, for reasons set forth in the Second Cause of Action hereafter, which is incorporated herein by reference, this First Cause of Action is properly brought by plaintiffs, as real parties in interest, in that Defendant Martin Bilafer, in his capacity as trustee, did refuse and neglect to bring this action himself, as then real party in interest; and, therefore, the right to pursue this action now lies in plaintiffs.

**II. Second Cause of Action: Damages for Breach of Fiduciary Duty**
**[Defendant Martin Bilafer]**

26. Plaintiffs incorporate paragraphs 1 – 25 above, as if fully restated herein.

27. Defendant Martin Bilafer was Trustee of the Judith Doyle Gift Trust from its inception until August 31, 2007, at which time Premier Trust replaced him as Trustee.

28. Plaintiffs are informed and believe and thereon allege that Defendant Martin Bilafer was Trustee of the Judith Doyle Gift Trust, and all actions or inaction herein complained of were within the course and scope of his duties and obligations as Trustee.

29. The Attorney Defendants have asserted that 1) Defendant Martin Bilafer, in his capacity as Trustee of the Judith Doyle Gift Trust, is the only proper party plaintiff with standing to sue the Attorney Defendants for the drafting errors as alleged herein, 2) that the Plaintiffs herein do not have standing to sue the Attorney Defendants for the drafting errors alleged herein, and 3) even though the Plaintiffs herein have timely filed their action against the Attorney Defendants, the statute of limitations has run as to any claim by Defendant Martin Bilafer, as the trustee of the

Judith Doyle Gift Trust, who the Attorney Defendants assert is the only party with standing to sue the Attorney Defendants for their drafting errors; and thus no party with standing has filed a timely suit against the Attorney Defendants. In the event that the Attorney Defendants' assertions, as set forth earlier in this paragraph, are found by the court to be correct, then, and only then, without prejudice to their allegations that they have standing for the reasons set forth in this complaint, Plaintiffs, allege, that 1) in order to preserve the Plaintiffs' rights to sue the Attorney Defendants on a timely basis, they have standing to sue the Attorney Defendants, after Defendant Martin Bilafer, in his capacity as trustee, during the time he was trustee of the Judith Doyle Gift Trust, refused to file suit within the applicable statute of limitations period against the Attorney Defendants, and 2) Defendant Martin Bilafer, in his capacity as trustee, has breached his fiduciary duties to Plaintiffs herein, and has been negligent by failing to take the actions alleged hereinafter, and such conduct has damaged plaintiffs as alleged further in this complaint.

30. Defendant Martin Bilafer owed the plaintiffs, as remainder beneficiaries under the Judith Doyle Gift Trust, a fiduciary duty to use such professional skill, prudence, diligence and competence, and to use the ordinary skill and capacity commonly possessed and exercised, in the performance of the role of Trustee. Moreover, Defendant Martin Bilafer owed the Judith Doyle Gift Trust and its beneficiaries fiduciary duties to act in their best interests and to protect their interests.

31. As Trustee, Defendant Martin Bilafer had a duty to the Plaintiffs as beneficiaries of the Mitchell Bilafer estate to 1) correct the error in the estate plan so that the estate plan would carry out the intents, desires and instructions of Mitchell Bilafer which would result in the Plaintiffs herein receiving one-seventh of the estate of Mitchell Bilafer rather than ten percent of the estate and 2) take steps to correct the estate plan documents to maintain the principal of the estate for the benefit of Judith's children (Plaintiffs herein) and to pass principal of the estate in equal one-seventh shares to all grandchildren of Mitchell Bilafer, including the Plaintiffs herein.

32. Defendant Martin Bilafer knew of drafting errors in the trust documents set forth above on or about November 15, 2005 when he, in his capacity of Trustee, was informed in writing of the error

Peter Renwick Thompson, Esq.

Peter Renwick Thompson, Esq.

by the Attorney Defendants. From that date forth, Defendant Bilafer knew that the 1999 trusts, as actually drafted, had errors which included the error that the 1999 trusts split the principal of Mitchell's estate equally between his two children and thus, Martin's two children are to receive 50% of Mitchell's estate (25% each), and Judith's five children are to receive 50% of Mitchell's estate (10% each).

33. Defendant Martin Bilafer was requested to work with the Miller Monson law firm to reform and correct the trust documents to correct the errors in drafting the trust.

34. Defendant Martin Bilafer's children were unintended beneficiaries of one of these errors, and in his capacity as Trustee, instead of working with the Attorney Defendants to correct these drafting errors as he should have in the exercise of his fiduciary duty, he instead knowingly and intentionally acted directly to the contrary: he had his Trustee's counsel contact and threaten to assert a conflict of interest as to the Miller Monson firm if they were, as planned, to take steps to correct these errors.

35. Defendant Martin Bilafer was asked by Plaintiff Richard Doyle to work with the Attorney Defendants to correct the error directed to the ultimate splitting of the principal of Mitchell's estate. Defendant Bilafer, in his capacity as trustee, refused to act.

36. Defendant Martin Bilafer was asked by Plaintiff Catherine Doyle to work with the Attorney Defendants to correct these drafting errors. Defendant Bilafer, in his capacity as trustee, refused to act.

37. Defendant Martin Bilafer was asked by Judith Doyle, the beneficiary of the Judith Doyle Gift Trust to work with the Attorney Defendants to correct these errors. Defendant Bilafer, in his capacity as trustee, refused to act.

38. As Trustee, Defendant Martin Bilafer had a fiduciary duty to file suit against the Attorney Defendants within the applicable statute of limitations period, so as to recoup the damages incurred as a result of the negligence herein alleged against them. But Defendant Bilafer did not and would

not file suit, and refused and neglected to do so, even though he as trustee, in the exercise of due care and in compliance with his fiduciary duty ought to have filed an action against the Attorney Defendants.

39. As Trustee, Defendant Martin Bilafer was, in failing to act as herein described, knowingly and intentionally and wrongfully failing to purse a remedy to correct these drafting errors and additionally he was failing to seek damages for the commission thereof from the Attorney Defendants; and the non-action, refusal, and neglect by Defendant Martin Bilafer to take such actions was a knowing and intentional breach of his fiduciary duty to the Plaintiffs herein.

40. In order to satisfy his fiduciary duties to the Judith Doyle Gift Trust, Defendant Martin Bilafer 1) was bound to take whatever action was proper for the acquisition and safekeeping of property of the estate and 2) should have, and could have, filed, within the statute of limitations, a lawsuit against the Miller Monson law firm to correct these errors and/or to seek damages for these errors. In this case, there was a demand by various plaintiffs, and Judith Doyle for Defendant Martin Bilafer to take the appropriate action to correct, in some form or fashion, these errors.

41. As Trustee, Defendant Martin Bilafer knowingly, intentionally, improperly, and in breach of his fiduciary duties to the Judith Doyle Gift Trust refused and neglected to file an action against the Attorney Defendants within the applicable statute of limitations period.

42. 42. As a direct and legal result of Defendant Martin Bilafer's negligent acts and omissions in his capacity as Trustee of the Judith Doyle Gift Trust, as alleged herein, Plaintiffs have incurred, and continue to incur, significant economic detriment and damages, in an amount in excess of Five Million Dollars ($5,000,000), which is within the unlimited jurisdiction of this court, as further to be proven at the time of trial herein.

43. The conduct of Defendant Martin Bilafer, as herein alleged, constituted oppression and malice, as the same are defined in Civil Code Section 3294, in that this was despicable conduct, carried on by Defendant Martin Bilafer with a willful and conscious disregard of the rights of plaintiffs, which

Peter Renwick Thompson, Esq.

Peter Renwick Thompson, Esq.

subjected them to cruel and unjust hardship.

**II. Third Cause of Action: Damages for Negligence**
**[Defendant Martin Bilafer]**

44. Plaintiffs hereby incorporate by reference Paragraphs 25-43 of this Complaint.

45. The actions and omissions of defendant Martin Bilafer, as herein alleged in these Paragraphs, were negligent, rather than intentional and knowingly wrongful, in that he failed to exercise due care in carrying out his duties as trustee, thereby resulting in damages to plaintiffs (other than punitive damages) as herein alleged.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount in excess of Five Million Dollars ($5,000,000), as to be proven at trial, pursuant to each cause of action herein alleged;

2. For further special and consequential damages in an amount to be proven at trial;

3. For punitive damages as and against Defendant Martin Bilafer, pursuant to the Second Cause of Action herein alleged; and

3. For such other and further relief deemed appropriate by the Court.

Dated: February 13, 2008

By:___/s/ Peter Thompson_____
Peter R. Thompson, Esq.,
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 148946 - SH**

**March 19, 2008**
**15:39:16**

**Civ Fil Non-Pris**
USAO #.: 08CV0512
Judge..: JOHN A HOUSTON
Amount.: $350.00 CK
Check#.: BC67469

**Total-> $350.00**

FROM: NIC INS CO. V. MILLER ET AL

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED MAR 19 2008 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY DEPUTY

'08 CV 0512 JAH LSP

ORIGINAL

**I. (a) PLAINTIFFS**
NIC Insurance Company

**DEFENDANTS**
Miller, Monson, Peshel, Polacek & Hosahaw, et al.

**(b)** County of Residence of First Listed Plaintiff New York
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Erik M. Pritchard
Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614
949-622-2700

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
28 U.S.C. Section 1332(a)(1)
Brief description of cause:
Declaratory judgment action pursuant to 28 U.S.C. Section 2201 and 2202.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE 3/19/08 SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 148946 AMOUNT $350 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

See 3/19/08

lR

American LegalNet, Inc.
www.FormsWorkflow.com